UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JAMES STEWARD and JILL POWELL,        CASE NO.

     Plaintiffs,
v.

POND APPLE PLACE III CONDOMINIUM
ASSOCIATION, INC. and JOANNE THUNA,

     Defendants.
_____/

# COMPLAINT

Plaintiffs, James Steward and Jill Powell, sue the Defendants, Pond Apple Place III Condominium Association, Inc. and Joanne Thuna, and states as follows:

## NATURE OF THE ACTION

1.    This is an action for declaratory relief; compensatory damages; punitive damages and attorneys' fees and costs for Defendants' violation of federal Fair Housing Act, as amended, 42 U.S.C. §§3601-36031 ("FHA").

## JURISDICTION, VENUE AND PARTIES

2.    This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 and 42 U.S.C. § 3613 for Plaintiffs claims arising under 42 U.S.C. § 3601 et seq.

3.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District and because the events giving rise to the claims occurred in this District.

4.    Plaintiff, Jill Powell, is *sui juris* and a resident of Martin County, Florida.

5.    Plaintiff, James Steward, is *sui juris* and a resident of Martin County, Florida.

6.    Defendant, Pond Apple Place III Condominium Association, Inc. is a Florida non-profit corporation whose principal address is located in Broward County, Florida.

7. Defendant, Joanne Thuna, is *sui juris* and a resident of Broward County, Florida.

8. All conditions precedent to this action have occurred, been satisfied or are otherwise waived.

### ALLEGATIONS OF DISCRIMINATION ON BASIS OF DISABILITY

9. Pond Apple Place III Condominium is a residential community located in Broward County, Florida ("Condominium") that prohibits pets.

10. Pond Apple Place III Condominium Association, Inc. ("Association") is the not-for-profit corporation that operates and manages the affairs of the Condominium. The Association acts through its board of directors.

11. Joanne Thuna (the "President") is a director and president of the Board of Directors for the Association.

12. Jill Powell ("Ms. Powell") is the former owner and resident of unit 277H (the "Unit") at Pond Apple Place III Condominium and former member of the Association.

13. Ms. Powell has had a record of hearing impairment, progressively losing her hearing due to sensory neural hearing loss from around her late twenties to the present date.

14. Ms. Powell is unable to hear every day environmental sounds such as the ringing of her door bell, the knocking on her door, the ringing of fire alarms, conversations over the telephone, sounds made by persons, cars, kids, bicycles or objects walking, running or moving around her and other environmental sounds.

15. Ms. Powell is also unable to communicate with others over the telephone and has difficulty understanding others when communicating in person. Ms. Powell requires statements to be repeated, statements to be written down or assistance from others to explain to her what had been said.

16. For the past ten years, Ms. Powell has been recognized by the Social Security Administration as having a disability for the purpose of receiving disability benefits.

17. The Association and the President know and have known about Ms. Powell's hearing loss. The Association has knowledge of her hearing loss through the interactions Ms. Powell has had with the Association's property manager, assistants, officers and directors.

18. The Association and its President have regarded Ms. Powell as a person with a hearing disability by accommodating her requests to communicate with her in writing or text rather than telephone.

19. In or about the middle of 2016, Ms. Powell met with the President to discuss Ms. Powell's hearing disability and her related need for an assistance animal.

20. At that meeting, Ms. Powell described to the President how an assistance animal would be used to assist her, explaining that an assistance animal would alert her to environmental sounds she could not hear. Ms. Powell also explained how this would allow her to more fully use and enjoy her home.

21. Having known Ms. Powell to have a hearing disability and having regarded Ms. Powell as a person with a hearing disability, the President responded to Ms. Powell by stating that "if anyone should have one, it's you."

22. The President then researched the issue to determine what kind of dogs are commonly used to accommodate persons with disabilities under the law.

23. On or about September 29, 2016, Ms. Powell made a formal written request for an accommodation on the basis of hearing disability. Ms. Powell's request sought a waiver of the Association's no pet restrictions (the "Request"). The Request was hand delivered to the Association's onsite property manager's office assistant. The Request referenced the Fair Housing Act and provided supporting information including among other things a copy of her detailed and confidential medical records reflecting a record of hearing impairment and a copy of her prior social security disability benefits award letters. The Request asked the Association to provide a written response so she could know when the accommodation was approved.

11

24. After the Request was made, months passed without any response.

25. Having received no response to the Request, Ms. Powell went forward with acquiring an assistance animal based on her need for an accommodation.

26. Her fiancé, Mr. Steward, assisted her and recommended she get a Labrador based on his experience in training service animals for persons with disabilities.

27. Ms. Powell purchased a Labrador and Mr. Steward assisted Ms. Powell by training the Labrador to alert Ms. Powell to environmental sounds.

28. In February 2017, Ms. Powell came back home from her trip to Tennessee and notified the President via text that she had acquired an assistance animal and was bringing it home with her.

29. On or about February 6, 2017, Ms. Powell brought the Labrador to their home at the Condominium.

30. After Ms. Powell and Mr. Steward brought the Labrador home, the President immediately attacked Ms. Powell and Mr. Steward, sending a barrage of unwelcome and discriminatory texts, emails and verbal attacks about the assistance animal that said:

    a. The size of her assistance animal was not appropriate for the Community;
    b. The accommodation of an assistance animal must be approved prior to moving in;
    c. Only medium dogs are allowed as assistance animals;
    d. Larger assistance animals are not allowed;
    e. Long leashes are prohibited for assistance animals;
    f. All assistance animals with the exception of Seeing Eye dogs are to be carried off the property for walking,
    g. The assistance animal had to be carried up and down the two flights of stairs even though it weighed more than half Ms. Powell's body weight and was half her size,

      h.  A form must be filled out,

      i.  Procedure must be followed, and that

      j.  Fines would be imposed unless the shortest route to get the assistance animal off the property was used.

31. The President demanded that Ms. Powell resubmit her supporting documentation by the end of the day.

32. Ms. Powell was shocked by the harassing communications she received via email and text from the President. She told the President how upsetting it was and how the harassment made her sick and unable to eat or sleep.

33. The President did not apologize. Instead, she continued the attacks, blaming Ms. Powell and the Labrador for upsetting the President and the 120 unit owners at the Condominium. The President also stated that the President had researched what the law permits for "hearing" dogs and claimed that Ms. Powell's dog was not a hearing dog since hearing dogs are small or medium size, as such the Association would not permit it and would only allow larger size dogs for blind persons, calling the latter animals Seeing Eye Dogs.

34. About this time, residents attacked Ms. Powell and Mr. Steward too. The attacks came when the two walked the common areas with the Labrador. Residents wagged their fingers in protest of the Labrador or otherwise angrily screamed at Ms. Powell and Mr. Steward from the windows of their cars as they passed by.

35. The Association was aware of this but did nothing to prevent the unwelcome harassment.

36. Ms. Powell did her best to comply with the Association's rules imposed by the President. Ms. Powell or Mr. Steward would carry their Labrador up and down the flights of stairs and use the shortest route out to avoid being fined.  But this was difficult. Ms. Powell and Mr. Steward are both about sixty years of age.  Carrying the Labrador up and down the stairs, hurt their backs.  The Labrador was more than half Ms. Powell's body

weight and nearly half her height.

37. Ms. Powell and her fiancé felt embarrassed and humiliated to have to carry the Labrador in their arms and discouraged them from leaving their home.

38. On February 16, 2017, Ms. Powell emailed the President to tell her to:

   a. stop the harassment over her assistance animal;

   b. provide a response to Ms. Powell's request for an assistance animal; and

   c. provide a safety hand rail for the stairs because of the difficulty Ms. Powell and her fiancé had in carrying her Labrador up and down two flights of stairs.

39. After receiving the email, the Association:

   a. never responded to the request to approve the assistance animal;

   b. denied the request for a handrail unless Ms. Powell paid for it; and

   c. provided no accommodation for carrying the assistance animal.

40. On or about March 17, 2017, the harassment continued. On that date, Mr. Steward was walking the Labrador. The President saw Mr. Steward and chased him down from behind screamingly angrily at him.

41. The Labrador saw and heard the President and began to act nervously. Agitated and distracted, the animal acted differently, being unable to calm down.

42. Mr. Steward turned to see what was going on behind him and saw the President coming towards him, yelling angrily and waving her arms and phone aggressively at him.

43. Mr. Steward tried to get away from the President but the President continued to follow him, chasing him all the way back to his home.

44. Mr. Steward was rattled and anxious, his face was flush and his heart racing.

45. Ms. Powell saw her fiancé at the door and her Labrador riled up as a result of the President coming behind her fiancé. Ms. Powell became angered and emotional. She closed the door on the President and yelled at the President to leave them alone as she let her fiancé in the house.

46. Ms. Powell's heart was racing. She was anxious and panicked and felt chest pains.

47. Having had enough of the harassment, Ms. Powell and Mr. Steward called the police who came and took down an incident report.

48. After this incident, the Association began retaliating against Mr. Steward. The President and the Association knew Mr. Steward was aiding Ms. Powell with her accommodation and, as such, escalated the matter further by threatening Ms. Powell and Mr. Steward that Mr. Steward would not be allowed to live with Ms. Powell and had to apply to reside at her home even though the Association had no regulations allowing it to approve or deny Mr. Steward's occupancy. Prior to obtaining the Labrador, the Association had never complained about Mr. Steward.

49. Ms. Powell provided Mr. Steward's information as demanded by the Association President. But the Association never responded to Ms. Powell after receiving his information.

50. After the President's latest attack, after the continued hostility towards them and the Labrador, after the continued failure to approve the accommodations request and after the retaliation against them based on Ms. Powell's decision to obtain an assistance animal, Ms. Powell and Mr. Steward were forced to move out of the community and find a new community that accommodates persons with disabilities.

51. When Ms. Powell tried to sell her unit, the Association and its President continued to discriminate against persons with disabilities, discriminating against the prospective buyer for the Unit after the prospective buyer requested an accommodation of the no pet policy based on emotional disability. This occurred when they:

> a. Notified the prospective buyer that the request for accommodation would not be approved about the same time the request was made to the President;
>
> b. Attempted to prevent the sale to the prospective buyer by stating

15

      that no decision would be made by the June 30, 2017 closing date, which occurred more than thirty days after the contract was submitted;

   c. Failed to engage in the interactive process, requesting no information to the extent it was skeptical;

   d. Failed to notice any Board meeting to review the request until Ms. Powell threatened suit for housing discrimination; and

   e. Stated at its Board meeting to decide the request: that the community has a 'no pet' policy, that it did not understand why there is even a meeting to review the buyer's request, that emotional support animals are not real and therefore will never be approved, that the documentation the buyer submitted was fake; and that the Association and its president knew that Ms. Powell and Mr. Steward were moving out of the community because they were constantly harassed because of the dog and that they "can't tell people not to harass [Ms. Powell and Mr. Steward]."

52. Thereafter, the buyer's lawyer notified the Association that it would file administrative complaints and seek damages against the Association. The Association then approved the buyer's request and the sale closed.

53. The continued unwelcome harassment of Ms. Powell and Mr. Steward by the Association and the President on the basis of Ms. Powell's disability and the continued unwelcome harassment by the residents on the basis of disability that the Association and the President knew or should have known about but failed to take prompt action to correct and end the harassment while having the power to do so was severe and pervasive so as to interfere with or deprive the Ms. Powell and Mr. Steward of their right to use or enjoy their home.

54. As a result of the Association's and the President's conduct, Ms. Powell and Mr. Steward suffered actual damages including:

   a. costs of moving,
   b. costs of temporary housing until they could find a new home,
   c. lost value in the sale price of their home since the home had to be sold immediately and below market value,
   d. costs for closing on the sale of the home,
   e. costs for closing on the purchase of their new home;
   f. costs for the increased price of their new home,
   g. taxes and accounting costs incurred to finance the purchase of their new home since they had to take distributions from retirement funds,
   h. other costs for the financing of the purchase of their new home;
   i. costs for re-training their assistance animal; and
   j. other damages including emotional distress, humiliation, embarrassment, frustration, difficulty sleeping and eating. loss and enjoyment of their home, loss of dignity, loss of consortium, and delays to their wedding based on the costs they were forced to incur to move out.

55. Plaintiffs have retained the undersigned to represent them in this cause and have agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATIONS OF 42 U.S.C. §3604(f)(2) and (3)(B)

56. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 - 54 above as though fully set forth herein.

57. Since 2003 Ms. Powell has been the owner of the Unit where she resided until she sold the Unit in July 2017.

58. Since 2009, Ms. Powell has had substantial limitations to the major life activity of hearing and has been an individual with a handicap within the meaning of the FHAA, 24 CFR §100.201

59. Ms. Powell's hearing disability is obvious, readily apparent and known by the Defendants, who have regarded her as a person with a hearing disability.

60. For these reasons, Ms. Powell is an aggrieved person as defined in U.S.C. § 3602(i)

61. Ms. Powell requested a reasonable accommodation of the no pets rule so she could have and use her assistance animal.

62. Ms. Powell's assistance animal was necessary for her equal use and enjoyment of her home including the common areas.

63. Defendants failed to approve Ms. Powell's accommodations request or otherwise modify its no pet restrictions, denying Ms. Powell from meaningfully and equally participating in the rights, benefits and privileges of using and enjoying her home including the common areas.

64. As a direct and proximate result of Defendants' refusal to accommodate Ms. Powell's disability, Ms. Powell suffered damages.

65. Defendants' discriminatory conduct was intentional, willful or taken in reckless disregard of the rights of Ms. Powell.

66. Defendants conduct constitutes:

    a. Discrimination in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap in violation of 42 U.S.C. § 3604(f)(1)

    b. Discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection therewith, because of handicap in violation of 42 U.S.C. § 3604(f)(2); and

    c. Coercion, intimidation, threats or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, the rights granted or protected by Section 804 of the FHAA, in violation of Section 818 of the FHAA, 42 U.S.C. § 3617

67. Ms. Powell is entitled to punitive damages to punish and deter Defendants' knowing or reckless disregard of Ms. Powell's rights under the FHAA as hereinbefore alleged.

68. Ms. Powell is entitled to an award of attorneys' fees and costs pursuant to 42 USC § 3613 of the FHAA.

**WHEREFORE**, Plaintiff, Jill Powell, demands judgment against the Pond Apple Place III Condominium Association, Inc. and Joanne Thuna, to declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities; to enjoin them from continuing to implement their discriminatory rules, policies and practices, and to award Plaintiff, Jill Powell, actual, special, nominal and punitive damages, and her attorneys' fees and costs and such other and further relief this Court deems just and equitable.

**COUNT II- RETALIATION (42 u.s.c. §3617)**

69. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 - 54 above as though fully set forth herein.

70. Since 2003 Ms. Powell has been the owner of the Unit where she resided until she sold the Unit in July 2017.

71. Since 2009, Ms. Powell has had substantial limitations to the major life activity of hearing and has been an individual with a handicap within the meaning of the FHAA, 24 CFR §100.201

72. Ms. Powell's hearing disability is obvious, readily apparent and known by the Defendants, who have regarded her as a person with a hearing disability.

73. Mr. Steward is a person associated with Ms. Powell. He is her fiancé who resided with her at the Unit. He has aided Ms. Powell in exercising her rights under the FHAA.

74. In response to Plaintiffs exercise of their rights, the Defendants threatened, coerced, retaliated against, and interfered with Ms. Powell and Mr. Steward as hereinbefore alleged.

75. Defendants' discriminatory conduct was intentional, willful or taken in reckless disregard of the rights of Ms. Powell and Mr. Steward.

76. Defendants conduct constitutes coercion, intimidation, threats or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, the rights granted or protected by Section 804 of the FHAA, in violation of Section 818 of the FHAA, 42 U.S.C. § 3617

77. Plaintiffs are further entitled to punitive damages to punish and deter Defendants' reckless disregard of Plaintiffs' exercise of their rights under the FHAA as hereinbefore alleged.

78. Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 USC §3613 of the FHAA.

**WHEREFORE,** Plaintiffs, James Steward and Jill Powell, demand judgment against the defendants, Pond Apple Place III Condominium Association, Inc. and Joanne Thuna, to declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities; and to award Plaintiffs actual, special, nominal and punitive damages, and their attorneys' fees and costs and such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable in accordance with Rule 38 of the Federal Civil Rules of Procedure.

DATED:  July 12, 2018                          Respectfully submitted,

Glazer & Sachs, P.A.
3113 Stirling Rd., Suite 201
Fort Lauderdale, Florida 33312
T: (954) 983-1112

By: /s/Paul Kim

Paul Kim
Florida Bar No. 37111
paul@condo-laws.com

*Attorneys for Plaintiffs*